UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JAMES RONALD STEVENS,                                Case No. 3:23-cv-01482-AA

          Petitioner,                                OPINION AND ORDER

    v.

ISRAEL JACQUEZ,

          Respondent.

_____

AIKEN, District Judge.

       Petitioner, an adult in custody (AIC) at the Federal Correctional Institution in Sheridan, Oregon (FCI Sheridan) brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and alleges that the Bureau of Prisons (BOP) failed to award him earned time credits to which he is entitled under the First Step Act (FSA). For the reasons explained below, the Petition is GRANTED with respect to Petitioner's eligibility to earn FSA time credits from October 21, 2022 to November 11, 2022. The Petition is DENIED in all other respects.

1 -     OPINION AND ORDER

## DISCUSSION

### A.  Earned Timed Credits Under the FSA

The FSA requires the Attorney General to establish evidence-based recidivism reduction (EBRR) programming and offer appropriate programs to eligible AICs based on their risk of recidivism, among other factors. *See,* 18 U.S.C. § 3631. Specifically, the Attorney General must implement "a risk and needs assessment system" that will:

(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

(3) determine the type and amount of [EBRR] programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs[.]

18 U.S.C. § 3632(a)(1)-(3)[1]; *see also id.* §§ 3621(h)(1)(A) (requiring an initial intake risk and needs assessment for each AIC and the assignment of "appropriate [EBRR] programs based on that determination"), 3631(b) (requiring the evaluation, development, and/or modification of "risk and needs assessment systems").

To meet these directives, BOP issued implementing regulations and program statements. *See* 28 C.F.R. § 523.40-.44; 87 Fed. Reg. 2705-19 (Jan. 19, 2022); BOP Program Statement § 5410.10 (found at https://www.bop.gov/policy/progstat/5410.01_cn2.pdf). In particular, BOP developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN)

---

[1] This subsection also provides that the risk and assessment system shall "reassess the recidivism risk of each prisoner periodically," "reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination," "determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs," "determine when a prisoner is ready to transfer into prerelease custody or supervised release," and "determine the appropriate use of audio technology for program course materials." 18 U.S.C. § 3632(a)(4)-(8).

scoring system, which is a risk assessment tool used to predict the likelihood of recidivism. *See* BOP Program Statement § 5410.01(5) ("Risk and Need Assessment")*; United States v. Hanson*, 470 F. Supp. 3d 1197, 1203 n.4 (D. Or. 2020).[2] BOP calculates each AIC's PATTERN score "as part of the intake process," as required by the FSA, and at six-month intervals. 18 U.S.C. § 3632(a)(1); *see also* Rogowski Decl. ¶ 6(i).

The FSA also creates incentives for AICs to participate in EBRR programming and other productive activities (PAs), including awards of earned time credits. 18 U.S.C. § 3632(d)(1)-(4); *Bottinelli v. Salazar*, 929 F.3d 1196, 1197-98 (9th Cir. 2019). An AIC assessed with a minimum or low risk of recidivism may earn ten days of time credit for every thirty days of "successfully completed" EBRR programming. 18 U.S.C. § 3632(d)(4)(A)(i). If an AIC has no increased risk of recidivism for two consecutive PATTERN assessments, the AIC earns an additional five days of credit for every thirty days of successfully completed programming. *Id.* § 3632(d)(4)(A)(ii). Earned FSA time credits are "applied toward time in prerelease custody or supervised release" and may reduce an AIC's sentence up to a maximum of 365 days or accelerate their release from prison into transitional housing. *Id.* § 3632(d)(4)(C); *see also id.* § 3624(g).

Pursuant to BOP implementing regulations, "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42(a). AICs may earn credit by "successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment." *Id.* § 523.42(b)(3); *see also id.* § 523.41(c)(1) ("An eligible inmate must be

---

[2] BOP also administers the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), which evaluates an AIC's needs in 13 categories to better target and reduce the AIC's risk of recidivism. BOP Program Statement § 5410.01(5).

'successfully participating' in EBRR Programs or PAs to earn FSA Time Credits for those EBRR Programs or PAs."); *see also* 18 U.S.C. § 3632(d)(4)(A).

"Successful participation" means that an eligible AIC "has participated in the EBRR programs or PAs" as recommended by BOP "and has complied with the requirements of each particular EBRR Program or PA." *Id.* § 523.41(c)(2). BOP does not consider AICs to be successfully participating in EBRR programming if they are: 1) placed in a "Special Housing Unit"; 2) designated to a location "outside the institution," including placement in a hospital, on an escorted trip, or on a furlough; 3) temporarily transferred to the custody of another Federal or non-Federal government agency or jurisdiction; 4) placed in mental health or psychiatric unit; or 5) "opting out" or "choosing not to participate in the EBRR programs or PAs that the Bureau has recommended." *Id.* § 523.41(c)(4)(i)-(v).

### B. Petitioner's Entitlement to FSA Time Credits

On March 2, 2022, Petitioner was sentenced to sixty-three months of imprisonment in the District of Utah. *See* Rogowski Decl. ¶ 3(a) & Ex. 1 at 2. On March 22, 2022, Petitioner was "administratively" admitted to BOP custody, and on April 8, 2022, he arrived at FCI Sheridan, his designated BOP facility. *Id.* ¶ 4 & Ex. 2. Pursuant to BOP rules, Petitioner then became eligible to earn FSA time credit.

On April 8, 2022, Petitioner received an initial risk recidivism assessment of "low." *Id.* ¶ 6(f). Between April 8, 2022 and July 1, 2022, Petitioner accumulated eighty-five program days at a credit factor of "10" for a total of twenty time credits. *Id.* ¶ 6(a) & Ex. 3 at 1. On July 1, 2022, Petitioner was transferred from FCI Sheridan to another BOP institution, FCI Victorville, for undisclosed reasons. *Id.* Ex. 2; Rogowski Suppl. Decl. ¶ 2. In accordance with BOP regulations, Petitioner did not earn FSA credit while incarcerated at FCI Victorville. Rogowski Decl. ¶ 6(d).

On October 21, 2022, Petitioner was transferred back to FCI Sheridan. *Id.* Ex. 2. However, Petitioner was considered ineligible to earn FSA time credit until November 11, 2022 because he was "coded as FRP 'REFUSE'" from October 14, 2022 to November 10, 2022. *Id.* ¶ 6(c) & Ex. 3 at 1. This code indicated Petitioner's apparent refusal to participate in BOP's Financial Responsibility Program (FRP). *Id.*

On November 2, 2022, Petitioner received a second risk recidivism assessment of "low" and could earn FSA time credit at the rate of fifteen days per month of successful participation in EBRR programming. *Id.* ¶ 6(i). Since November 11, 2022, Petitioner has earned FSA time credit at a credit factor of "15." *Id.* ¶ 6(b),(i).

### 1.   FSA Time Credit Between January 3, 2022 and April 8, 2022

Petitioner first claims that he is entitled to FSA time credits that should have accrued from January 3, 2022 to April 8, 2022. *See* Pet. & Ex. A. However, the FSA expressly prohibits AICs from earning time credits "prior to the date that the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii).[3] A sentence of imprisonment "commences" under § 3585(a) "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Petitioner was not in federal custody awaiting transportation to his designated facility until his sentencing on March 2, 2022, and he was not eligible for FSA credit until that date, at the earliest.

Respondent maintains that Petitioner was ineligible to earn time credits until April 8, 2022, when he arrived at FCI Sheridan, because BOP regulations prohibit AICs from earning FSA time credits until they arrive at the "designated Bureau facility where the sentence will be

---

[3] The record also reflects that Petitioner was credited with time served from January 3, 2022 to March 1, 2022. Rogowski Decl. Ex. 1 at 3.

served." 28 C.F.R. § 523.42(a). Petitioner argues that BOP's eligibility regulation conflicts with the plain language of the FSA and that he was eligible for FSA time credits as of March 2, 2022. In so arguing, Petitioner relies on *Huihui v. Derr*, 2023 WL 4086073 (D. Haw. June 20, 2023).

There, the district court held that the petitioner "was eligible to start earning" FSA time credits as of her "sentencing date, i.e., the date Petitioner was received in custody awaiting transportation to the official detention facility at which the sentence is to be served." *Id.* 2023 WL 4086073, at *4. Citing the FSA, the district court found that "Congress has directly spoken to the precise question of *when* a prisoner is ineligible" for FSA time credit by barring an AIC "from earning credits (1) before the statute was enacted, and (2) during official detention before the prisoner's sentence commences under § 3585(a)." *Id.* 2023 WL 4086073, at *5 (citing 18 U.S.C. § 3632(d)(4)(B)). The district court emphasized that under 18 U.S.C. § 3585(a), a "term of imprisonment commences" on the date an incarcerated defendant is taken into custody and is "awaiting transportation to the official detention facility." *Id.* The district court thus concluded that the petitioner's "ineligibility [for FSA time credit] ended the moment she was sentenced" and she "should have been afforded an opportunity to earn FSA ETCs toward supervised release" as of that date." *Id.*; *see also Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 218 (D.N.H. 2023) (finding that "the plain language" of the FSA "clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits" and that the "regulation's definition of a different date is contrary to the plan language of the FSA").

Petitioner maintains that he, like the petitioner in *Huihiu*, was in federal custody and awaiting transportation to his designated facility as of March 2, 2022, and that he is entitled to FSA time credit as of that date.

I agree that 28 C.F.R. § 523.42(3) conflicts with the plain language of the FSA, insofar as it defines commencement of a sentence as the date on which an AIC arrives at a designated BOP facility. By incorporating the definition of commencement in 18 U.S.C. § 3585(a), the FSA expressly provides that an AIC is not eligible to earn FSA time credit prior to the date on which the AIC is received in federal custody and awaiting transporting to the designated facility. *See* 18 U.S.C. § 3632(d)(4)(B)(ii). Even so, this provision does not necessarily mean that an AIC actually earns or is entitled to an award of FSA time credit as of that date.

First, Petitioner's argument ignores the FSA requirement that an AIC be assessed for the risk of recidivism "as part of the intake process." *Id.* §§ 3621(h)(1)(A), 3632(a)(1) (the BOP must "determine the risk of recidivism of each prisoner as part of the intake process"). BOP must then "determine the type and amount of [EBRR] programming that is appropriate" for each AIC and "assign" appropriate EBRR programming and PAs based on its assessment of the AIC's "specific criminogenic needs." *Id.* § 3632(a)(3); *see also id.* § 3621(h)(1)(A). BOP must also try to "tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism." *Id.* § 3632(b)(2). As a practical matter, BOP cannot complete a comprehensive risk and needs assessment on the day of sentencing.

Second, the application of FSA time credits is expressly conditioned on an AIC's "successful participation" in EBRR programming. *See id.* § 3632(d)(4)(A) (authorizing the application of time credits in exchange for "successful completion" or "successful participation in evidence-based recidivism reduction programming or productive activities").[4] Petitioner makes no showing that he successfully participated in EBRR programming to justify the FSA time credit he seeks. Instead, Petitioner appears to argue that he is entitled to time credit as of

---

[4] Notably, the FSA contemplates successful *completion* of EBRR programming to earn FSA credits, while BOP's regulations require only successful *participation* in programming. *Compare* 18 U.S.C. § 3632(d)(4) *with* 28 C.F.R. 523.42(c).

March 2, 2022 simply because he was sentenced and in federal custody as of that date. To the contrary, the FSA authorizes an award of time credits only if an AIC earns them by participating in EBRR programs. *Pierce v. LeMaster*, 2024 WL 439447, at *1 (E.D. Ky. Jan. 29, 2024) (stating that "generally speaking 'successful participating' requires, at a minimum, actual participation"); *see also Yufenyuy*, 659 F. Supp. 3d at 217-18 (explaining that FSA "provisions make it clear that prisoners 'shall' earn time credits, at the statutory rate, *for all qualified programs in which they successfully participate*, except for the programs in which they participated while…in detention before the date" of sentencing) (emphasis added).

Finally, I find the facts of *Huihui* distinguishable from this case. Granted, the district court found that the petitioner was eligible to start earning FSA time credit as of her sentencing date. *Huihui*, 2023 WL 4086073, at *5. Notably, the petitioner had been housed in a federal facility for almost two years prior to sentencing and had not been allowed to earn FSA time credits for almost seven months after sentencing. *Id.* 2023 WL 4086073, at *1, 7. The district court emphasized:

> This is not a situation in which the prisoner has been waiting for a month or two to be transferred. She has been waiting over seven months to start earning any credits. She should not have to sit and wait to start taking advantage of evidence-based recidivism reduction programming or productive activities simply because BOP's Designation and Sentence Computation Center has not yet designated her. She has been sentenced, incarcerated and is currently serving her sentence in BOP's custody at FDC. She should not be prevented from earning FSA ETCs based on the whims of the BOP designation system.

*Id.* 2023 WL 4086073, at *7. Ultimately, the district court ordered BOP to "conduct the assessment[s] required under the FSA," or, if the petitioner "has already been assessed, is eligible under the FSA, and has 'successfully complete[d] evidence-based recidivism reduction programming or productive activities,'" to calculate the petitioner's FSA time credit "with her

sentencing date as the date she is eligible to start earning FSA ETCs," regardless of her official designation at a BOP facility. *Id.*

Here, Petitioner arrived at FCI Sheridan approximately five weeks after sentencing and was not denied the opportunity to earn FSA time credit for an unreasonable amount of time. Moreover, Petitioner presents no evidence suggesting that he successfully participated in EBRR programming between March 2, 2022 and April 8, 2022 to justify an award of time credit under the FSA. Accordingly, Petitioner is not entitled to FSA time credit during this period and does not establish entitlement to habeas relief.

### 2.  FSA Time Credit Between July 2, 2022 and November 11, 2022

Next, Petitioner claims that he is entitled to FSA time credits that should have accrued between July 1, 2022 and November 11, 2022. *See* Pet. & Ex. A. BOP determined that Petitioner was ineligible to earn FSA time credit during this period, because Petitioner was housed at a facility other than FCI Sheridan for several months and refused to participate in the FRP. *See* 28 C.F.R. § 523.41(c)(4)(ii),(v) (providing that an AIC is not "successfully participating" in EBRR programming if the AIC has a "designation status outside the institution" or is "choosing not to participate" in recommended EBRR programs).

Between July 1, 2022 and October 21, 2022, Petitioner was either in transit or housed at FCI Victorville, outside of his designated facility.[5] Rogowski Decl. Ex. 2, Ex. 3 at 1. Several courts have found that BOP reasonably interpreted the FSA in determining that eligible AICs are not "successfully participating" in EBRR programming when in transit to or in "the custody of another Federal or non-Federal government agency." *Jobin v. Warden, FCI-Mendota*, 2024 WL 1367902, at *5 (E.D. Cal. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL

---

[5] It is unclear why Petitioner was transferred to FCI Victorville, although the record suggest that the transfer was for segregation purposes. Rogowski Decl. Ex. 2, Ex. 3 at 1.

2786898 (E.D. Cal. May 30, 2024); *Pierce*, 2024 WL 439447, at *2 ("Courts have consistently upheld the BOP's decision to deny FSA credits to inmates who were unable to complete the required PAs or EBBR training because they were in transit during the pertinent periods.") (citing cases)).

Regardless, Petitioner presents no evidence that he successfully participated in EBRR programming while at FCI Victorville or that the circumstances of his transfer support the accrual of FSA time credit from July 1, 2022 until his return to FCI Sheridan on October 21, 2022. Ultimately, it is Petitioner's burden to establish entitlement to habeas relief, and he fails to meet this burden. *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004).

Finally, Respondent concedes that Petitioner was erroneously coded as refusing to participate in FRP between October 14, 2022 and November 11, 2022, and BOP has agreed to remove this designation from Petitioner's account. Resp't Sur-Reply at 2, 7; Rogowski Suppl. Decl. ¶¶ 3-4. Accordingly, Petitioner became eligible to earn FSA credits upon his return to FCI Sheridan on October 21, 2022 rather than on November 11, 2022.

## CONCLUSION

For the reasons explained above, the Petition (ECF No. 1) is GRANTED to the extent that Petitioner was eligible to earn FSA time credit from October 21, 2022 to November 11, 2022. BOP shall recalculate Petitioner's FSA time credits accordingly. The Petition is DENIED in all other respects.

IT IS SO ORDERED.

DATED this <u>25th</u> day of June, 2024.


_____/s/Ann Aiken_____
ANN AIKEN
United States District Judge